## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

DEBORAH BRUMIT and ANDREW
SIMPSON,

*Plaintiffs*,

v.

THE CITY OF GRANITE CITY, ILLINOIS,

*Defendant.*

Case No. ___3:19-cv-1090_____

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1.     This civil-rights lawsuit challenges a Granite City ordinance that forces private landlords to evict law-abiding tenants as punishment for other people's crimes.

2.     For over three years, Plaintiffs Deborah ("Debi") Brumit and Andrew ("Andy") Simpson have lived at 7 Briarcliff Drive in Granite City, Illinois. In recent months, they have been caring for two of Debi's grandchildren (one a toddler, the other a baby).

3.     Each month, Debi and Andy pay rent to their landlord, Clayton Baker.

4.     Debi, Andy, and Clayton Baker all are satisfied with this arrangement. Yet Granite City is coercing Clayton Baker into declaring Debi and Andy's lease void and evicting them from their home. The basis for the City's campaign is not that Debi and Andy have done anything wrong; it is that one of Debi's adult daughters—who does not live with them—stole a van elsewhere in town. That was enough for the City to invoke its compulsory-eviction law and demand that Debi and Andy be evicted. Under the law, the City coerces private landlords to evict

entire families if any householder or guest commits a crime anywhere within city limits. It is no defense that the tenants had nothing to do with the crime. And, seemingly, it is no defense that the guest wasn't even a guest. As Debi and Andy told at least two City officials, Debi's daughter was not in fact staying with them when she committed the crime for which the City is demanding their eviction. She was in Granite City that night only because Debi had driven her *from Missouri* to a hospital in Granite City to try to get her treatment for substance abuse.

5.      Enough is enough. The City cannot be trusted to honor the rights of its citizens. Its relentless efforts to make innocent people homeless violate the U.S. Constitution at a bedrock level, and for that reason Plaintiffs seek relief in this Court.

## JURISDICTION AND VENUE

6.      Plaintiffs Deborah Brumit and Andrew Simpson (together, the "Plaintiffs") bring this civil-rights lawsuit under the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

7.      Plaintiffs seek declaratory and injunctive relief against enforcement of the City of Granite City's compulsory-eviction law, Granite City Municipal Code §§ 5.142.010 *et seq.* (the "compulsory-eviction law").

8.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, and 2202 and 42 U.S.C. § 1983.

9.      Venue lies in this Court under 28 U.S.C. § 1391.

## PARTIES

10.      Plaintiff Deborah ("Debi") Brumit is a citizen of the United States and a resident of the City of Granite City, Illinois.

11. Plaintiff Andrew ("Andy") Simpson is a citizen of the United States and a resident of the City of Granite City, Illinois.

12. Defendant City of Granite City, Illinois ("Granite City" or "City") is a municipal entity organized under the constitution and laws of the State of Illinois. Defendant is located at 2000 Edison Avenue, Granite City, Illinois.

## FACTUAL ALLEGATIONS

13. Under its compulsory-eviction law, Granite City uses the threat of governmental sanctions to coerce private landlords to evict private tenants who have done nothing wrong.

**A. "He is guilty if I say he's guilty": Granite City's compulsory-eviction law**

14. In 2013, the *St. Louis Business Journal* asked Brian Konzen to identify the "[m]ost controversial issue you've worked on" during his many years as city attorney for Granite City. His answer: the "crime-free housing program." Julie Murphy, *Beyond zoning: St. Louis area attorneys see it all*, St. Louis Bus. J., Sept. 27, 2013.

15. Benign in label, Granite City's "crime-free housing program" is deeply unconstitutional in practice. In truth, it is a compulsory-eviction law. Under it, the City can—and does—coerce private landlords to evict entire families from their homes based on crimes committed by other people at other places.

16. First enacted in 2006, Granite City's compulsory-eviction law applies to all rental properties located within the corporate limits of Granite City. The law also applies to certain properties that are subject to a "contract for deed" (also known as an installment contract). Granite City Mun. Code § 5.142.010.

17. Granite City's compulsory-eviction law is not limited in its application to public housing.

18.     Granite City's compulsory-eviction law is not limited in its application to rental properties that are subsidized with governmental money.

19.     Rather, Granite City's compulsory-eviction law applies to private landlords, renting private property to private tenants who pay their rent with privately earned income.

20.     Landlords are subject to governmental sanctions if they violate the compulsory-eviction law. These governmental sanctions include monetary fines and suspension or revocation of their business license.

21.     Among the violations that can give rise to governmental sanctions are the following:

> The failure of the licensed lessor to take prompt, diligent and lawful steps to remove the lessees from possession of the rental unit;
>
> a.     Following notice of the commission of a felony in the rental unit where allowed or permitted by lessee, or
>
> b.     Following notice of four ordinance violations in the residential rental unit, where allowed or permitted by lessee, or
>
> c.     Following notice of other violation of the crime-free housing lease addendum, exhibit B, as now or as hereafter amended, where violation of that lease addendum expressly constitutes good cause for termination of the lease.

*Id.* § 5.142.050(A)(3).

22.     The addendum referenced in Section 5.142.050(A)(3)(c) proscribes all manner of criminal offenses committed by tenants, members of their households, or guests—not just on the rental property, but elsewhere too. (A true and correct copy of the "Lease Addendum for Crime Free Housing" is attached to this complaint as Exhibit 1.) For example, the addendum provides:

> a.     The "Lessee or any member of lessee's household, shall not engage in criminal activity, including drug-related criminal activity, within the city

limits of the City of Granite City." Lease Addendum for Crime Free
Housing ¶ 1.

b. The "Lessee or members of lessee's household, <u>shall not engage in any act</u>
<u>intended to facilitate criminal activity,</u> including drug-related criminal
activity within the city limits of the City of Granite City." *Id.* ¶ 3
(emphasis in original).

c. The "Lessee, or a member of lessee's household, shall not engage in any
criminal activity found to be equivalent to a Forcible Felony at any
location, on the property premise or otherwise." *Id.* ¶ 8.

23. Moreover, it is Granite City's policy and practice to expand certain of these
addendum provisions even further. For example, the addendum provides that neither the lessee
nor "members of lessee's household" shall engage in any act intended to facilitate criminal
activity within city limits. *Id.* ¶ 3. But in compulsory-eviction demands, the City has also
asserted that it is enough for a "Lessee's guest" to have engaged in such an act.

24. The addendum further provides that "a single violation of any of the provisions"
in the addendum "shall be good cause for termination of lease." *Id.* ¶ 9.

25. The addendum is not a "lease addendum" as most people would understand that
phrase. Neither landlords nor tenants are free to negotiate or opt out of the addendum. Rather, the
City mandates that landlords and tenants sign the document as a condition of receiving their
occupancy permits. Even that is an empty act; if no one were to sign it, the addendum still would
apply. By law, "[e]very agreement for lease of residential real estate located within the corporate
limits of the city of Granite City . . . shall be deemed to include all terms listed on the lease
addendum." Granite City Mun. Code § 5.142.060.

26.     In this way, Granite City's compulsory-eviction law differs fundamentally from the type of program recommended by the original developer of crime-free housing programs. Earlier this year, the founder and executive director of the International Crime Free Association Inc. "said his association recommends cities implement voluntary programs, not mandatory ones." Garrett Bergthold, *ACLU challenges Adelanto's crime-free rental law*, The Daily Press (Mar. 19, 2019), https://tinyurl.com/y5w4cflx.

27.     Not only are landlords and tenants automatically "deemed" to have acquiesced to the addendum, but landlords are required by law to enforce the addendum whenever the City demands that they do so. As described above, a landlord is required by law "to take prompt, diligent and lawful steps to remove the lessees from possession of the rental unit" upon the City's notifying the landlord of any "violation of the crime-free housing lease addendum." Granite City Mun. Code § 5.142.050(A)(3)(c).

28.     The end result of Granite City's compulsory-eviction law is that landlords are required by law to evict entire families whenever the City claims that any member of a tenant's "household" has (1) "engage[d] in criminal activity" anywhere in Granite City, (2) "engage[d] in any act intended to facilitate criminal activity" anywhere in Granite City, or (3) committed a "forcible felony" anywhere at all. *See* Lease Addendum for Crime Free Housing ¶¶ 1, 3, 8; *see also* Granite City Mun. Code § 5.142.050(A)(3)(c).

29.     If the City demands that a landlord evict a lessee under the compulsory-eviction law, the landlord does not have discretion to forgo eviction because the lessee was innocent of any wrongdoing.

30.     If the City demands that a landlord evict a lessee under the compulsory-eviction law, the landlord does not have discretion to forgo eviction because the lessee was not involved in the alleged criminal activity.

31.     If the City demands that a landlord evict a lessee under the compulsory-eviction law, the landlord does not have discretion to forgo eviction because the lessee was unaware of the alleged criminal activity.

32.     If the City demands that a landlord evict a lessee under the compulsory-eviction law, the landlord does not have discretion to forgo eviction because the alleged criminal activity took place at a location other than the rental property.

33.     If the City demands that a landlord evict a lessee under the compulsory-eviction law, the landlord does not have discretion to forgo eviction because the alleged criminal activity had no connection to the rental property.

34.     If the City demands that a landlord evict a lessee under the compulsory-eviction law, the landlord does not have discretion to forgo eviction for any reason at all.

35.     When the City claims that a predicate crime has taken place under the compulsory-eviction law, the landlord has no choice but to evict the entire family living at the rental property or face revocation or suspension of his license. At the same time, however, nothing in the compulsory-eviction law prevents the same landlord from renting any other property in Granite City to the same evicted tenants. Nor does the compulsory-eviction law prevent any other landlord from renting any other property in Granite City to those tenants.

36.     Before Granite City may take action to revoke or suspend a landlord's business license under the compulsory-eviction law, the ordinance provides that certain procedures "shall be followed." Granite City Mun. Code § 5.142.080. "Simultaneously with the service of any

request made upon a landlord for implementation of eviction or other proceedings to terminate a

residential lease," Granite City must serve upon both "the landlord and the tenant" a notice

containing the following information:

  a.  A copy of the compulsory-eviction law;

  b.  The address of Granite City's building and zoning administrator; and

  c.  "[F]acts alleging the grounds for revocation or suspension of the lessor's
      or landlord'[s] license."

*Id.* § 5.142.080(A).

37.  Upon receipt of this information, either the landlord or the lessee may file a

written grievance with the building and zoning administrator "within fifteen days of the date

stated on the notice served." *Id.*

38.  If either the landlord or the lessee invokes the grievance process, the City is

required to schedule a hearing. *Id.* § 5.142.080(B).

39.  At the hearing, "[t]he hearing officer's decision shall be limited to the question

whether the landlord must begin eviction proceedings against the tenant." *Id.* § 5.142.080(M).

40.  At the hearing, the landlord or the lessee "must first make a showing of an

entitlement to the relief sought." *Id.* § 5.142.080(J). Only "thereafter" must the City "sustain the

burden of justifying the action or failure to act against which the grievant is directed." *Id.*

41.  At one such hearing, on information and belief, a high-ranking officer with the

Granite City Police Department demanded that a pregnant woman be evicted based on an

offense allegedly committed by her fiancé. The police officer, on information and belief,

justified the City's position on the following ground: "he is guilty if I say he's guilty."

42.     There is no requirement in Granite City's compulsory-eviction law that the City prove that the lessees were complicit in a household member's or guest's criminal activity.

43.     There is no requirement in Granite City's compulsory-eviction law that the City prove that the lessees were aware of a household member's or guest's criminal activity.

44.     For many offenses, there is no requirement in Granite City's compulsory-eviction law that the City prove that the predicate criminal activity occurred at the lessees' home.

45.     It is not a defense to enforcement of Granite City's compulsory-eviction law that no lessee was complicit in the criminal activity of a household member or guest.

46.     It is also not a defense to enforcement of Granite City's compulsory-eviction law that the lessees were unaware of the criminal activity of a household member or guest.

47.     For many offenses, it is not a defense to enforcement of Granite City's compulsory-eviction law that the predicate criminal activity occurred at a location other than the lessees' home.

48.     In fact, of the more than 300 compulsory-eviction demands Granite City has issued between 2014 and today, more than one hundred cite crimes—from shoplifting to driving with a revoked license—that did not take place at the rental property targeted for eviction.

**B.     Debi Brumit and Andy Simpson**

49.     Debi Brumit and Andy Simpson have been in a committed relationship for several years and are engaged to be married. In August 2016, they moved to Granite City and began renting a small home at 7 Briarcliff Drive.

50.     Below is a true and correct photograph of Debi and Andy's home, taken on October 4, 2019:



51.     Debi and Andy rent their home at 7 Briarcliff Drive from Clayton Baker on a month-to-month basis.

52.     Debi has three adult children. And at first, Debi's youngest—Tori—lived with Debi and Andy at 7 Briarcliff Drive. When they moved in, Tori was 20 years old and seven months pregnant with her first child.

53.     Tori moved out in January 2017 and began living with her older sister, in Missouri. In April 2018, she gave birth to her second child.

54.     As Debi and Andy understand it, Tori began struggling with substance abuse within a few months of having her second child.

55.     This past January, Tori's older sister no longer had room to house her. So Tori (and her two children) began staying with Debi and Andy again, in Granite City.

56.     Initially, Debi and Andy had no idea about the extent of Tori's substance-abuse problem. But by May of this year, it had become clear to Debi that Tori was engaging in self-destructive behavior and failing to care for her children.

57.     Around the middle of May, Debi resorted to tough love: She told Tori to get out. If and when Tori could prove that she was ready to get clean and do right by her children, Debi made clear that she and Andy would do everything they could to help her turn her life around. Until then, Tori would no longer be welcome in their home.

58.     In Debi and Andy's understanding, Tori moved back to Missouri and began "couch-surfing" with a new boyfriend.

59.     Tori left her two children behind with Debi and Andy. Debi and Andy have cared for the children in Tori's absence (the older one is three years old and the younger is around 18 months), and they are now in the process of seeking guardianship.

60.     On Saturday, June 8, Tori called Debi. She told Debi that she wanted to turn her life around and that she and her new boyfriend were ready to get treatment for their addiction.

61.     Debi immediately drove to Missouri, picked Tori up, and brought her to the Gateway Regional Medical Center, in Granite City. She brought the new boyfriend too.

62.     Debi stayed at the facility while Tori and her boyfriend were registered. And once the two were taken back to triage, Debi left. She got home around 9:30 or 10:00 that night, confident her daughter was where she needed to be and would get the help she needed.

63.     At around 3:00 or 4:00 A.M., Debi and Andy were awoken by a phone call. It was Tori; she and her boyfriend were standing outside the house.

64.     Debi and Andy flatly refused to allow the boyfriend into their home, letting Tori alone come in. Tori told Debi that the hospital had released them. She said she still wanted to get help. But after talking with Debi for an hour or so, Tori (and her boyfriend) left.

65.     Debi and Andy did not hear anything from Tori the next day, a Sunday.

66.     At around 2:30 A.M. on Monday morning, however, Debi noticed two recent missed calls from her older daughter. She called back, and her older daughter told her that Tori had been arrested for stealing a van the night before. That was the first Debi and Andy had heard of the crime.

67.     On information and belief, both Tori and her boyfriend were released on bond after their arrest for the June 8 incident and neither has yet been convicted of any crime associated with that incident.

**C.      Granite City's campaign to evict Debi and Andy from their home**

68.     Granite City lost no time kicking its compulsory-eviction machine into high gear.

69.     Within days of her daughter's arrest, Debi received a compulsory-eviction demand in the mail.

70.     A true and correct copy of the compulsory-eviction demand Debi and Andy received is attached to this complaint as Exhibit 2.

71.     The demand was sent from Lieutenant Mike Parkinson—Granite City's "Crime Free Multi-Housing Officer"—and was directed to "Andrew Simpson, Deborah Brumit, Tori Gintz, Tyler Sears, and any and all known or unknown occupants."

72.     Tyler Sears was Tori's boyfriend.

73.     The letter first stated in general terms that

> It is my understanding there is evidence of either the commission of a felony in your rental unit allowed or permitted by your lessee, or four Ordinance violations in your residential rental unit, or in common areas

related to your rental unit, within the past six (6) months, or violation of any term of the lease addendum for crime free housing as detailed in Ordinance #8343.

74.     The letter also stated:

That on 06/10/2019 Tori Gintz and Tyler Sears were charged in Madison County Circuit Court with Offenses relating to motor vehicles (Class 2) Felonies. The Charges stem from an incident that occurred on 06/09/19 at 0527 hours in which a witness contacted the police after seeing a male and a female enter and drive away in a National Rent to Own van in ther parking lot located at 3801 Nameoki Rd. Officer Rozell spotted the van and concucted a traffic stop on the vehicle and determined that Sears and Gintz were in the van and had "punched" the ignition to steal the vehicle. This is a clear violation of the Crime Free Lease Addendum and grounds for eviction.

75.     Around June 22, 2019, Debi hand-delivered a grievance to Granite City's Office of the Building and Zoning Administrator. If she could have the opportunity to explain the situation to City officials, she thought, they would realize she and Andy had done nothing wrong.

76.     The City set a grievance hearing for July 22, 2019.

77.     Debi and Andy both attended the grievance hearing. They were joined by their landlord, Clayton Baker.

78.     At the grievance hearing, Debi tried to explain that her daughter no longer lived with them. She presented several pieces of mail addressed to Tori at a Missouri address.

79.     Debi also presented a copy of Tori's hospital-release papers from the night of the theft, showing that Tori was at the hospital that night.

80.     Clayton Baker also explained that, as far as he knew, Tori had not been living at 7 Briarcliff Drive. He explained that he had visited the house several times and had not seen her.

81.     Lieutenant Parkinson (the Crime Free Multi-Housing Officer) then interrogated both Debi and Clayton Baker.

82.     Lieutenant Parkinson interrogated Debi about whether she would ever let Tori—her daughter and the mother of her grandchildren—back into her home.

83.     Lieutenant Parkinson even demanded to know whether Tori would be allowed to visit for Christmas.

84.     In due course, Debi and Andy received a copy of the hearing officer's written decision.

85.     In a section titled "FINDINGS OF FACT," the City's hearing officer wrote:

> A violation has occurred pursuant to Granite City Ordinance 8186-AN ORDINANCE TO AMENDORDINANCE 7948, TO REGULATE BUSINESS LICENSES FOR LESSORS OF RESIDENTIAL UNITS. AND TO CALL FOR REVOCATION OF LESSOR'S BUSINESS LICENSES, WHERE THE LESSOR PERMIT'S THE LEASED PREMISES TO HARBOR CRIMINAL ACTIVITY

86.     The hearing officer's decision included no other "findings of fact."

87.     On information and belief, the City's hearing officer recites identically worded "findings of fact" in almost every grievance hearing held under Granite City Municipal Code § 5.142.080.

88.     The "findings of fact" for Debi and Andy even contain the same typographical errors as the "findings of fact" issued in other grievance hearings.

89.     On information and belief, the City's hearing officer copied the "findings of fact" from a decision issued in a previous grievance hearing and pasted that text into a new document to create "findings of fact" for Debi and Andy.

90.     For his "DECISION," the City's hearing officer wrote: "The landlord, Clayton Baker, must begin eviction proceedings against the tenants listed above."

91.     Clayton Baker does not want to evict Debi and Andy.

92.     Given the City's demand that he "must begin eviction proceedings," however, Clayton Baker sent Debi and Andy a 30-day notice. The notice is titled "30 day notice of non-renewal of Lease, request to vacate premises." It states that Debi and Andy "must vacate and surrender the leased premises on the day of the expiration of the Lease, as stated above." It further states that "[t]his notice of non-renewal is given at least 30 days in advance pursuant to the lease agreement."

93.     The 30-day notice is dated August 24, 2019, but it bears a notarization date of August 30, 2019. On information and belief, the notice was sent to Debi and Andy's house by certified mail. The first delivery attempt (on September 6) failed, and the notice was delivered on September 13, 2019.

### INJURY TO PLAINTIFFS

94.     Debi and Andy do not want to leave their home.

95.     Clayton Baker does not want to evict Debi and Andy from their home.

96.     Debi and Andy are not currently in violation of any term of their lease.

97.     But for Granite City's compulsory-eviction demand, Clayton Baker would not even be considering evicting Debi and Andy from their home.

98.     But for Granite City's compulsory-eviction demand, Clayton Baker would not have sent Debi and Andy a 30-day notice last month.

99.     Yet given Granite City's unequivocal demand that he evict Debi and Andy, Clayton Baker feels that he has no choice but to comply. Clayton Baker is not comfortable defying Granite City because doing so would expose him to revocation of his business license and monetary fines.

100.    Any and all steps Clayton Baker has taken and will take to evict Debi and Andy are directly and exclusively traceable to the City's enforcement of its compulsory-eviction law.

101.    If this Court were to grant Debi and Andy the relief requested in this complaint, Clayton Baker would take no further steps to evict Debi and Andy for Tori's crime.

102.    Being evicted at the City's insistence would harm Debi and Andy. They do not own or rent any other residence. If they are kicked out of their home, they are not sure where they would go. (On information and belief, Clayton Baker owns no other rental homes in Granite City or anywhere else.)

103.    Debi and Andy do not have the resources to immediately rent another home—much less make a down-payment to buy one. In large part because she was missing so many days to take care of her two grandchildren, Debi lost her job this past August. And although Andy continues to work as a dump-truck driver, they are living paycheck-to-paycheck.

104.    If Debi and Andy were to be evicted, they would likely need to rely on charity from family to avoid rendering themselves homeless.

105.    Being forced out of their home would also make it more difficult to continue caring for Debi's two grandchildren.

106.    In the absence of intervention from this Court, Granite City's compulsory-eviction law and the City's associated practices and policies will cause Plaintiffs irreparable harm.

107.    Losing one's home is an irreparable harm.

108.    Granite City is inflicting this irreparable harm for no legitimate reason.

109.    Expelling Debi and Andy from their home will not eliminate any nuisance or noxious use of the property.

110.     Expelling Debi and Andy from their home will not even remove the individual who committed the crime resulting in eviction. Debi's daughter Tori was not staying in the home when she committed the offense for which the City is demanding Debi and Andy's eviction.

111.     Expelling Debi and Andy from their home will push them closer to homelessness without eliminating any condition that gave rise to Granite City's compulsory-eviction demand.

## CONSTITUTIONAL VIOLATIONS

### <u>Count I</u>
### Fourteenth Amendment to the U.S. Constitution
### (Due Process Clause)

112.     Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 111 of this complaint.

113.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

114.     The Due Process Clause secures against state infringement of those fundamental rights and liberties that are deeply rooted in our Nation's history and traditions and that are implicit in the concept of ordered liberty.

115.     Among those rights is the right of innocent people not to be punished by the government.

116.     Stripping innocent people of their home based on the crime of another infringes on their fundamental rights.

117.     Debi and Andy have a fundamental property right and a fundamental liberty interest in their lease with Clayton Baker.

118.     Debi and Andy have a fundamental property right and a fundamental liberty interest in their home at 7 Briarcliff Drive, in Granite City, Illinois.

119.    Granite City's compulsory-eviction law violates Debi's and Andy's fundamental rights under the Due Process Clause.

120.    To the extent Debi and Andy's lease authorizes Clayton Baker to terminate the agreement in certain circumstances, Clayton Baker retains the discretion (as with any contract) to enforce or not enforce his right to terminate the agreement.

121.    Clayton Baker does not want to terminate his lease with Debi and Andy based on the crime committed by Debi's adult daughter.

122.    Clayton Baker would not even consider terminating his lease with Debi and Andy based on that crime but for Granite City's demand that he do so.

123.    Effectively, the compulsory-eviction law requires that Debi and Andy's interest in their home at 7 Briarcliff Drive be extinguished.

124.    Extinguishing Debi and Andy's interest in their home at 7 Briarcliff Drive serves no purpose beyond punishing them (and Debi's grandchildren) for a crime committed by Debi's adult daughter.

125.    In fact, the effect of extinguishing Debi and Andy's property right in their home at 7 Briarcliff Drive in these circumstances would be to punish Debi and Andy far more harshly than Debi's daughter—even though her daughter is the one alleged to have committed the crime in question.

126.    Debi's daughter Tori no longer lives at 7 Briarcliff Drive; indeed, she was not even staying there when she committed the crime that triggered the City's compulsory-eviction demand. Evicting Debi and Andy is therefore not a means of removing Tori from a property where she does not live.

127.    Granite City does not contend that Debi and Andy were participants or coconspirators in the crime committed by Tori.

128.    Debi and Andy were not participants or coconspirators or in any other way involved in the crime committed by Tori.

129.    In fact, Debi and Andy did not even learn about Tori's crime until nearly a day after it took place.

130.    Debi and Andy are not being punished for anything they did. They are instead being punished purely because Debi's adult daughter spent some amount of time at their home at some point in time. Holding individuals strictly liable for crimes committed by people they associate with infringes their fundamental rights.

131.    The City's efforts to strip Debi and Andy of their home for a crime committed by Debi's adult daughter shock the conscience.

132.    Just as Granite City cannot violate Debi and Andy's fundamental rights directly, the City cannot coerce their landlord to violate their fundamental rights on the City's behalf.

133.    Granite City's compulsory-eviction law, on its face and as applied to Plaintiffs, violates the Due Process Clause of the Fourteenth Amendment.

134.    Unless the City is enjoined from enforcing the compulsory-eviction law, Plaintiffs will continue to suffer irreparable harm.

135.    Plaintiffs have no other remedy by which to prevent or minimize this continuing irreparable harm to their constitutional rights.

136.    Absent declaratory and injunctive relief, Plaintiffs will suffer irreparable harm caused by the deprivation of their constitutional rights.

## Count II
### Fourteenth Amendment to the U.S. Constitution
### (Equal Protection Clause)

137.    Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 111 of this complaint.

138.    The Equal Protection Clause of the Fourteenth Amendment requires government officials to treat similarly situated individuals similarly.

139.    Granite City's compulsory-eviction law violates Plaintiffs' rights under the Equal Protection Clause in at least two ways.

140.    *First*, the compulsory-eviction law treats Debi and Andy differently from people who are identically situated in all respects but one: people who have a traditional mortgage or own their home outright rather than possessing a leasehold interest.

141.    The City's compulsory-eviction law distinguishes between (1) people who own their homes in fee simple or who have traditional mortgages, and (2) people who rent their homes or who are buying their homes under an installment contract.

142.    The only reason Debi and Andy are required to be evicted under the compulsory-eviction law is that their property interest in their home at 7 Briarcliff Drive takes the form of a leasehold. If they held any other property interest in their home—fee simple, fee simple subject to a mortgage lien, a life estate, etc.—they would not be subject to the compulsory-eviction law.

143.    If, at the time Debi's daughter had committed her offense, Debi and Andy had owned their home in fee simple, the City could not have enforced its compulsory-eviction law against them.

144.     If, at the time Debi's daughter committed her offense, Debi and Andy had owned their home in fee simple subject to a traditional mortgage, the City could not have enforced its compulsory-eviction law against them.

145.     In all material respects, Debi and Andy are similarly situated to other Granite City residents who own their homes in fee simple.

146.     In all material respects, Debi and Andy are similarly situated to other Granite City residents who have a traditional mortgage.

147.     In distinguishing between residents who own their homes in fee simple (or subject to a traditional mortgage) and residents who rent their homes or are buying them under an installment contract, the City is burdening the latter residents' fundamental rights.

148.     The City cannot justify under any level of scrutiny its distinction between residents who own their homes in fee simple (or subject to a traditional mortgage) and residents who rent their homes or are buying them under an installment contract.

149.     On information and belief, the City will be unable to produce any evidence sufficient to justify its distinction between residents who own their homes in fee simple (or subject to a traditional mortgage) and residents who rent their homes or are buying them under an installment contract.

150.     The City's distinction between residents who own their homes in fee simple (or subject to a traditional mortgage) and residents who rent their homes or are buying them under an installment contract fails every level of constitutional scrutiny. That is because the distinction is not rationally related to a legitimate governmental interest.

151.    There is no legitimate reason for Granite City's compulsory-eviction law to treat Debi and Andy worse than residents who own their homes, or who have a mortgage, or who are buying their homes under a long-term installment contract.

152.    *Second*, Granite City's compulsory-eviction law treats Debi and Andy differently from other people who have the same amount of alleged responsibility—i.e., none—for the crime underlying the City's compulsory-eviction demand.

153.    Under the compulsory-eviction law, Debi and Andy must be evicted from 7 Briarcliff Drive because Debi's adult daughter committed a crime somewhere else.

154.    Neither Debi nor Andy had any involvement in the crime committed by Debi's daughter.

155.    Neither Debi nor Andy had any responsibility for the crime committed by Debi's daughter.

156.    In fact, neither Debi nor Andy even knew a crime had been committed until nearly a day after the fact.

157.    With respect to the crime that is the basis for Granite City's compulsory-eviction demand, Debi and Andy are similarly situated to everyone else in the world (except for Debi's daughter and her daughter's boyfriend) in that they have no responsibility for the crime committed by Debi's daughter.

158.    Yet Granite City's compulsory-eviction law singles them out for unique—and uniquely harsh—treatment.

159.    If Clayton Baker were to evict Debi and Andy, he would be free to rent 7 Briarcliff Drive to literally anyone else in the world—including Debi's daughter, whose alleged crime is the sole basis for the City's compulsory-eviction demand.

160.    Debi and Andy are being treated worse than everyone else in the world, including Debi's daughter: Under the City's compulsory-eviction law, they alone are prohibited from living in their home at 7 Briarcliff Drive.

161.    There is no good reason that Debi and Andy—alone in the world—are forbidden from maintaining a home at 7 Briarcliff Drive.

162.    Immediately upon their eviction, any other landlord at any other property in Granite City would be free to rent any other home to Debi and Andy.

163.    Indeed, Debi and Andy would be eligible to rent a different home from Clayton Baker himself. If, for example, Clayton Baker also owned *9* Briarcliff Drive, he could comply with the terms of the compulsory-eviction law simply by moving Debi and Andy next door—even if Debi's daughter were a member of their household.

164.    Requiring Debi and Andy to move but not to otherwise change anything about their household does not serve any legitimate end of government. There is no legitimate reason for Granite City to prevent them from leasing 7 Briarcliff Drive while leaving them free to lease any other property within city limits.

165.    In distinguishing between Debi and Andy and everyone else in the world, Granite City's compulsory-eviction law burdens Debi and Andy's fundamental rights.

166.    The City cannot justify under any level of scrutiny its distinction between Debi and Andy and everyone else in the world.

167.    On information and belief, the City will be unable to produce any evidence sufficient to justify its distinction between Debi and Andy and everyone else in the world.

168.    The City's distinction between Debi and Andy and everyone else in the world fails every level of constitutional scrutiny. That is because the distinction is not rationally related to a legitimate governmental interest.

169.    There is no legitimate reason for Granite City's compulsory-eviction law to treat Debi and Andy worse than everyone else in the world.

170.    For each of the grounds described above, Granite City's compulsory-eviction law, on its face and as applied to Plaintiffs, violates the Equal Protection Clause of the Fourteenth Amendment.

171.    Unless Granite City is enjoined from enforcing the compulsory-eviction law against Plaintiffs, Plaintiffs will continue to suffer irreparable harm.

172.    Plaintiffs have no other remedy by which to prevent or minimize this continuing irreparable harm to their constitutional rights.

173.    Absent declaratory and injunctive relief, Plaintiffs will suffer irreparable harm caused by the deprivation of their constitutional rights.

<u>**Count III**</u>
**Fifth and Fourteenth Amendments to the U.S. Constitution**
**(Takings Clause)**

174.    Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 111 of this complaint.

175.    A leasehold is a property interest protected under Illinois law.

176.    Debi and Andy's leasehold in 7 Briarcliff Drive in Granite City is a property interest protected under Illinois law.

177.    If Granite City is successful in its efforts to coerce Clayton Baker to evict Debi and Andy from 7 Briarcliff Drive against his will, Debi and Andy's entire property interest in 7 Briarcliff Drive will be destroyed.

178.    Because Clayton Baker would not terminate Debi and Andy's lease at 7 Briarcliff Drive but for Granite City's command that he do so, Granite City's command will be the sole cause of the destruction of Debi and Andy's property interest in 7 Briarcliff Drive.

179.    Granite City, acting under color of law, seeks to cause Debi and Andy to be deprived of their property interest in 7 Briarcliff Drive without just compensation in violation of the Takings Clause of the Constitution.

180.    As applied to Debi and Andy, Granite City's compulsory-eviction law is being deployed to deprive them of a reasonable market return on their interest in 7 Briarcliff Drive and upset their investment-backed expectations. For over three years, for example, Debi and Andy have maintained the home and property (including by spending their own money) with the expectation that they would continue to live there for as long as is mutually agreeable to them and Clayton Baker.

181.    Unless Granite City is enjoined from enforcing the compulsory-eviction law, Debi and Andy will continue to suffer irreparable harm.

182.    Debi and Andy have no other remedy by which to prevent or minimize this continuing irreparable harm to their constitutional rights.

183.    Absent declaratory and injunctive relief, Debi and Andy will suffer irreparable harm caused by the deprivation of their constitutional rights.

<u>**Count IV**</u>
**First and Fourteenth Amendments to the U.S. Constitution**
**(Freedom of Association)**

184.     Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 111 of this complaint.

185.     The U.S. Constitution (including the First and Fourteenth Amendments) protects the right of association.

186.     The only reason that Granite City is trying to force Debi and Andy out of their home is that Debi's adult daughter spent some amount of time at their home at some point in time.

187.     Letting one's adult daughter spent some amount of time in one's home at some point in time is a form of association.

188.     Punishing Debi and Andy for crimes committed by Debi's adult daughter is punishing them for their decision to associate with Debi's adult daughter.

189.     Granite City's compulsory-eviction law contains none of the procedural protections or substantive requirements found in any of the other legal tools, like the law of conspiracy, by which one person may be held responsible for the crimes of another.

190.     Instead, the compulsory-eviction law imposes guilt by association for the crimes of anyone who ever spends time in a lessee's home, whether they are a brother, a lover, a friend or (as here) an adult daughter.

191.     Holding individuals strictly liable for crimes committed by people they associate with burdens the right to association.

192.    Upon information and belief, Granite City has no good reason—and possesses no evidence suggesting it has a good reason—for holding lessees strictly liable for the crimes of their household members and guests.

193.    Granite City's compulsory-eviction law, on its face and as applied to Debi and Andy, unconstitutionally violates their right to association.

194.    Unless the City is enjoined from enforcing the compulsory-eviction law, Debi and Andy will continue to suffer irreparable harm.

195.    Debi and Andy have no other remedy by which to prevent or minimize this continuing irreparable harm to their constitutional rights.

196.    Absent declaratory and injunctive relief, Debi and Andy will suffer irreparable harm caused by the deprivation of their constitutional rights.

## PRAYER FOR RELIEF

Plaintiffs request that the Court:

A.    Declare that Granite City's compulsory-eviction law—both on its face and as applied to Plaintiffs—violates the Fourteenth Amendment's Due Process Clause, the Fourteenth Amendment's Equal Protection Clause, the Fifth Amendment's Takings Clause, and the constitutional right to association;

B.    Preliminarily and permanently enjoin Granite City from enforcing its compulsory-eviction law and associated policies and practices against Plaintiffs;

C.    Preliminarily and permanently enjoin Granite City from enforcing its compulsory-eviction law and associated policies and practices against Plaintiffs based on the crime alleged in the compulsory-eviction demand attached to this complaint as Exhibit 2;

D.      Award Plaintiffs $1.00 in nominal damages for each and every violation of a

provision of the U.S. Constitution;

E.      Award attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C.

§ 1988 and all other applicable federal laws;

F.      Award such further legal and equitable relief as the Court may deem just and

proper.

Dated: October 7, 2019.                             Respectfully submitted,

                                                    s/Samuel B. Gedge
Bart C. Sullivan, #6198093                          Samuel B. Gedge (lead attorney)
FOXGALVIN, LLC                                      Robert McNamara
One South Memorial Drive, 12th Floor                INSTITUTE FOR JUSTICE
St. Louis, MO 63102                                 901 North Glebe Road, Suite 900
Phone: 314.588.7000                                 Arlington, VA 22203
Facsimile: 314.588.1965                             Telephone: 703.682.9320
E-mail: bsullivan@foxgalvin.com                     Facsimile: 703.682.9321
                                                    E-mail: sgedge@ij.org; rmcnamara@ij.org

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS**

DEBORAH BRUMIT and ANDREW
SIMPSON,

                         *Plaintiffs,*

          v.

THE CITY OF GRANITE CITY, ILLINOIS,

                         *Defendant.*

Case No. 3:19-cv-1090

---

**VERIFICATION OF DEBORAH BRUMIT**

---

I, Deborah Brumit, declare as follows:

I have personal knowledge of the facts set forth in paragraphs 2–4, 10, and 49–111 of this complaint, and if called upon, I would competently testify as to them.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning myself, my family, and my interactions with the City of Granite City, Illinois, are true.

Executed on October 04, 2019

Deborah Brumit

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

DEBORAH BRUMIT and ANDREW
SIMPSON,

*Plaintiffs,*

v.

THE CITY OF GRANITE CITY, ILLINOIS,

*Defendant.*

Case No. 3:19-cv-1090

---

### VERIFICATION OF ANDREW SIMPSON

---

I, Andrew Simpson, declare as follows:

I have personal knowledge of the facts set forth in paragraphs 2–4, 11, and 49–111 of this complaint, and if called upon, I would competently testify as to them.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning myself, my family, and my interactions with the City of Granite City, Illinois, are true.

Executed on October 04, 2019

_____
Andrew Simpson