IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBORAH BRUMIT and ANDREW SIMPSON, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 19-CV-1090-SMY |
| vs. | )<br>) |
| CITY OF GRANITE CITY, ILLINOIS, | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Deborah Brumit and Andrew Simpson assert First, Fifth, and Fourteenth Amendment claims related to Defendant Granite City, Illinois' efforts to evict them from their rental house pursuant to an ordinance. On October 18, 2019, the undersigned issued a preliminary injunction preventing their eviction (Doc. 15).

Now pending before the Court are Defendant's motion to dismiss for failure to state a claim (Doc. 18) and motion to dismiss for lack of jurisdiction (Doc. 28). The Court conducted a hearing on these motions (Doc. 42). Following the hearing, Plaintiffs filed a Notice of Supplemental Authority (Doc. 44) and the parties filed supplemental briefs (Docs. 52, 53). For the following reasons, the motion to dismiss for failure to state a claim is **GRANTED in part and DENIED in part** and the motion to dismiss for lack of jurisdiction is **DENIED**.

### Background

Plaintiffs make the following allegations in the Complaint (Doc. 1): Brumit and Simpson live in a single-story house at 7 Briarcliff Drive in Granite City, Illinois ("Granite City") and pay rent to Clayton Baker, their landlord. They have three adult children, including their daughter,

Tori Gintz who moved in with them in January 2019. Gintz move out in May 2019, leaving her two minor children with Plaintiffs. In the early morning of June 9, 2019, Gintz came to Plaintiffs' house, came inside and talked to Plaintiffs for an hour, and left. That night, Gintz and her boyfriend, Tyler Sears, were arrested for stealing a van in Granite City.

Two days later, Plaintiffs received a "Notice of Violation" letter from Lt. Mike Parkinson, a Crime Free Multi-Housing Officer, advising them that pursuant to a Granite City Ordinance, they were subject to eviction because of the crime committed by Gintz and Sears (Doc. 1-2). At the time, Granite City's Municipal Code § 5.142.010, *et seq.*, ("Crime-Free Housing Ordinance" or "CFHO") required eviction of tenants who committed or permitted the commission of a felony in the rental unit, acquired four ordinance violations, or who violated the "crime-free housing lease addendum" ("CFHLA"), which tracks language in the CFHO. In relevant part, the CFHLA mandated eviction if a lessee, a member of the lessee's household, or guest engaged in or facilitated criminal activity in or near the leased property or engaged in drug related activity, violence, or forcible felonies within city limits or "otherwise" (Doc. 1-1). Plaintiffs and Gintz signed the CFHLA agreeing to its terms on December 2, 2016.[1]

After receiving the Notice of Violation, Brumit submitted a grievance to Granite City's Office of the Building and Zoning Administrator. A hearing was held on July 22, 2019 during which Plaintiffs explained that their daughter no longer lived with them. The hearing officer determined that Plaintiffs must be evicted for violating the CFHO and CFHLA and their landlord (who opposed eviction) gave them the mandatory 30 days' notice to vacate the premises. The hearing officer provided no individualized findings of fact but simply copied decisions from

---

[1] Attached to the Complaint is an unsigned copy of the CFHLA (Doc. 1-1). Defendant attached a signed copy of the CFHLA to their motion to dismiss (Doc. 19-1, pp. 5-6). The Court may consider these documents and the ordinance at issue in ruling on the motions to dismiss. *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017).

previous hearings.

Plaintiffs filed the instant lawsuit on October 7, 2019 raising due process (Count I), equal protection (Count II), takings (Count III), and freedom of association (Count IV) claims. They seek a declaration that the CFHO is unconstitutional, preliminary and permanent injunctive relief against enforcement of the ordinances, $1.00 in nominal damages, attorney fees, and "such further legal and equitable relief as the Court may deem just and proper."[2] [3]

### Discussion

### Motion to Dismiss for Lack of Jurisdiction (Doc. 28)

---

[2] The CFHO was amended in the Fall of 2019 (after this case was filed) when Illinois' Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. § 5/1-101, *et seq.*, was amended making it a civil rights violation for "an owner or any other person engaging in a real estate transaction . . . because of . . . an arrest record . . . to . . . [r]efuse to engage in a real estate transaction . . . [or] [a]lter the terms, conditions or privileges of a real estate transaction . . . ." *Id*. §5/3-102. For purposes of the statute, an "arrest record" includes "an arrest not leading to a conviction." *Id*. §5/1-103(B-5). The statute further provides:

> The prohibition against the use of an arrest record under Section 3-102 shall not preclude an owner or any other person engaging in a real estate transaction, or a real estate broker or salesman, from prohibiting the tenant, a member of the tenant's household, or a guest of the tenant from engaging in unlawful activity on the premises. *Id*. § 5/3-102.5.

The changes became effective on January 1, 2020. In response to these amendments, Granite City issued Ordinance 8805 limiting application of the CFHO to criminal conduct occurring on leased premises or "conviction of lessee, a member of lessee's household, or a guest of lessee for drug related activity, or a Forcible Felony anywhere in the corporate limits of the City of Granite City . . . ." (Doc. 29-2). During the hearing before this Court on February 10, 2020, Defendant represented that it had withdrawn the Notice of Violation issued to Plaintiffs and that, as a practical matter, it could not compel their landlord to institute eviction proceedings in state court in light of the amended IHRA (Doc. 42). There is no showing that the amendments to the CFHO apply retroactively.

[3] Due to the novel Coronavirus, Covid-19, Governor J. B. Pritzker issued Executive Orders 2020-30 and 2020-48 prohibiting all evictions through August 22, 2020. https://www2.illinois.gov/government/executive-orders (last visited July 31, 2020). The prohibition is continued through March 31, 2021 through Executive Orders 2020-72 and 2021-04. https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2021-04.aspx (last visited February 8, 2021).
Granite City has since repealed the CFHO and replaced it with a version adopted on September 1, 2020. The amended ordinance does not include mandatory eviction language. Instead, it places a limit on occupancy licenses for landowners and requires a "mitigation plan" if criminal acts occur on the property, there are four or more ordinance violations, or a violation of a new CFHLA (Doc. 52-3 and 52-4). City of Granite City Mun. Code § 5.142.050 (2020), https://library.municode.com/il/granite_city/codes/municipal_code?nodeId=TIT5BUTALIRE_VIOTBU_CH5.142LILEREUN (last visited February 8, 2021); City of Granite City, IL Ordinances 8856 and 8873, https://library.municode.com/il/granite_city/ordinances/municipal_code?nodeId=1038951 (last visited February 8, 2021). The record does not contain a copy of the revised CFHLA.

Article III of the United States Constitution limits federal jurisdiction to live cases and controversies. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Thus, a case becomes moot and a court lacks jurisdiction if "the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id*. (quotation marks and citations omitted). A live case or controversy must be apparent throughout all stages of the litigation. *Arizonians for Official English v. Arizona*, 520 U.S. 43, 67 (1997). "A question of mootness arises when [ ] a challenged ordinance is repealed during the pendency of litigation" and the plaintiff is seeking only prospective injunctive relief. *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003). However, a claim is not moot if a plaintiff seeks damages. *Buckhannon Bd. Of Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 608-9 (2001). Defendant argues that Plaintiffs' claims are moot because the CFHO has been materially altered so that they would not be subject to eviction under the circumstances underpinning this lawsuit.

When a private party voluntarily ceases challenged conduct, a case is not necessarily moot because he is "free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953). However, when the defendant is a public entity "we place greater stock in their acts of self-correction, so long as they appear genuine." *Federation*, 326 F.3d at 929 (quotation marks and citation omitted). The Court does not presume public officials are acting in bad faith "unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar." *Id*. at 930.

Plaintiffs claim that suspicious timing, lack of amended legislation in other jurisdictions in reaction to the amended IHRA, and reliance on the pandemic to enact policies undercuts confidence in Granite City's actions. These considerations alone, however, cannot support a

finding of bad faith. That said, because the amendments to the CFHO do not have retroactive effect, there is also no guarantee that Granite City will not again issue a notice of violation and attempt to have Plaintiffs evicted.  There is similarly no indication the CFHLA that residents are directed to sign will be materially different from the document signed by Plaintiffs.

Moreover, this Court is not persuaded that Plaintiffs' request for nominal damages moots their claims.  *See Chafin v. Chafin*, 568 U.S. 165, (2013) ("'a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.  As long as the parties have concrete interest, however small, in the outcome of the litigation, the case is not moot." (quotation marks and citations omitted)); *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 799 (7th Cir. 2016) (stating in dicta that a request for nominal damages "saves the case from mootness" where the challenged statute had been repealed); *but see Freedom from Religion Foundation, Inc. v. Concord Community Schools*, 885 F.3d 1038, 1053 (7th Cir. 2018) (leaving open the question of "whether a suit for nominal damages alone is a sufficiently justiciable controversy under Article III").  Accordingly, the Motion to Dismiss for Lack of Jurisdiction (Doc. 28) is **DENIED.**[4]

**Motion to Dismiss for Failure to State a Claim (Doc. 18)**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations in the Complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the allegations must be "more than labels and

---

[4] In light of this conclusion, it is unnecessary to consider more recent versions of the CFHO.  Therefore, Defendant's Motion to file Additional Supplemental Authority (Doc. 54) is **DENIED as MOOT.**

conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This requirement is satisfied if the Complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

### *Due Process (Count I) and Equal Protection (Count II)*

Plaintiffs allege that the CFHO, on its face and as applied, violates the Due Process Clause of the Fourteenth Amendment. Leaseholders have a "significant" property interest in leased property; therefore, they are entitled to due process prior to any deprivation. *Greene v. Lindsey*, 456 U.S. 444 (1982); *Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 135 (2002). Due process "centrally concerns the fundamental fairness of governmental activity" and Plaintiffs allege that it is fundamentally unfair to deprive them of their home based on the actions of third-parties. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992), overruled on other grounds, *South Dakota v. Wayfair, Inc.*, 585 U.S. ___, ___, 138 S.Ct. 2080, 2092-2093 (2018).

Defendant argues that Plaintiffs' due process claim fails as a matter of law because they signed the CFHLA which permits eviction for the commission of a felony. As an initial matter, Plaintiffs argue the Court cannot consider material outside of the pleadings and that their signature on the CFHLA is meaningless because no person is required to sign away their constitutional rights as a condition of living in Granite City. Plaintiffs are incorrect on this point; the Court may in fact consider the signed CFHLA. Plaintiffs attached an unsigned copy of the document to their

Complaint and Defendant attached the signed copy to its motion. The Court may consider documents attached to the Complaint and central to allegations in the Complaint when ruling on a Rule 12(b)(6) motion. *Amin Ijbara Equity Corporation*, 860 F.3d at 493 n.2.

In the CFHLA, Plaintiffs and Gintz agreed that they and their guests or other persons under their control would not "engage in criminal activity, including drug-related criminal activity" or equivalents to forcible felonies in the city limits or on or near the premises leased (Doc. 19-1). Plaintiffs also agreed that a violation of the CFHLA "shall be good cause for the termination of lease, unless otherwise provided by law" (*Id.*). Plaintiffs argue however that the "unconstitutional conditions doctrine" makes the CFHLA a nullity. That doctrine prevents the government from using conditions to produce a result that it cannot directly require. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013) ("As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury."). Thus, Plaintiffs argue that because Granite City cannot directly evict a private leaseholder because of the criminal actions of a lessee/guest, it also cannot force an eviction through the CFHLA.

Defendants counter that the CFHO is sanctioned by *Dep't of Housing and Urban Dev. v. Rucker*, 535 U.S. 125 (2002). In *Rucker*, the Supreme Court analyzed a statute directing public housing authorities to use leases to terminate tenancy if the tenant, a member of his household, a guest, or other person under his control engages in criminal activity or drug-related criminal activity on or off the premises. *Id.* at 127-8. The court noted that the statute, 42 U.S.C. § 1437d(l)(6), "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests

whether or not the tenant knew, or should have known, about the activity." 535 U.S. at 130. It found it significant that the statute gave housing authorities discretion in evicting tenants and concluded "it was reasonable for Congress to permit no-fault evictions" in order to curb crime and provide safe housing. *Id*. 134-5. The Court also distinguished between the government acting as a landlord and acting as a sovereign; thus, "the government is not attempting to criminally punish or civilly regulate respondents as members of the general populace. It is instead acting as a landlord of property that it owns, invoking a clause in a lease to which respondents have agreed and which Congress expressly required." *Id*. 135. This is the very distinction Plaintiffs draw in their Complaint – Granite City is not acting as a landlord and managing property that it owns. Rather, through the CFHLA, it is regulating the general populace through a backdoor. In this respect, Plaintiffs argue that the CFHO, on its face and as applied, violates the Due Process Clause rendering the CFHLA a nullity.

The "fundamental right" Plaintiffs seek to invoke is the right to not be punished (by eviction from a rental property) due to the criminal acts of a third party. They cite various cases for the general propositions that one ought not to be punished for the actions of others and that one's home is sacrosanct. *See e.g. Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 704-5 (1897) ("No property is more sacred than one's home.") and *Scales v. United States*, 367 U.S. 203, 224 (1961) ("In our jurisprudence guilt is personal."). What is missing, however, is precedent for the existence of the particular fundamental right Plaintiffs urge this Court to recognize. Indeed, the undersigned wonders whether "[t]he mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustain it . . . ," *Reno v. Flores*, 507 U.S. 292, 303 (1993), in light of the admonition that the list of fundamental rights is a "short one" that the Supreme Court has cautioned should not be expanded. *Sung Park v. Indiana University School of Dentistry*, 692 F.3d 828, 832

(7th Cir. 2012). But this does not end the inquiry.

Plaintiffs argue that even if a fundamental right is not at issue, substantive due process and the equal protection clause protect them against arbitrary and irrational governmental actions. *See, Eby-Brown Co., LLC v. Wisconsin Dept. of Agriculture*, 295 F.3f 749, 754 (7th Cir. 2002) (while noting the differences between a substantive due process claim and an equal protection claim, analyzing both claims under a rational basis test when no fundamental right or suspect class is involved). Under a rational basis test, a statute is upheld "so long as it bears a rational relation to some legitimate end" even if the statute is "'unwise, improvident, or out of harmony with a particular school of thought.'" *Eby-Brown Co., LLC.*, 295 F.3d at 754 (quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955); *Campos v. Cook County* 932 F.3d 972, 975 (7th Cir. 2019) ("Substantive due process protects against only the most egregious and outrageous government action."). At the pleading stage, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewsk v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (analyzing a class-of-one equal protection claim). Here, Plaintiffs allege that there is no rational reason for Granite City to treat them differently than "everyone else in the world" (Doc. 1, ¶ 165). They point out that even if they were evicted, they could simply move in next door, to another rental property, or could become homeowners who are not subject to the CFHO.

Crime deterrence and prevention are rational and legitimate reasons to evict renters. *See*, *Univ. Professionals of Illinois, Local 4100, IFT-AFT, AFL-CIO v. Edgar*, 114 F.3d 665, 667 (7th Cir. 1997) ("No quantum of evidence is necessary to demonstrate this relationship between means and end: to defeat an equal protection claim subject to rational-basis scrutiny, defendants-appellees

must only proffer a sound reason for the legislation.").[5] Although the CFHO, as it applied to Plaintiffs, was striking in its breadth and reach, Plaintiffs have failed to allege facts sufficient to overcome the presumption of rationality that applies to government classifications. Therefore, Counts I and II will be dismissed for failure to state a claim.

### *Takings Clause (Count III)*

Plaintiffs assert that they have spent their own money maintaining the property with the expectation that they would reside there "for as long as is mutually agreeable to them and Clayton Baker" and claim they are entitled to a "reasonable market return on their interest in 7 Briarcliff Drive" and that the CFHO "upset their investment-backed expectations." Defendant argues Plaintiffs' claim is not ripe because no taking has actually occurred and that the allegations are threadbare. A takings claim is not ripe until just compensation has been denied (either through a formal or informal state process or otherwise). *See e.g. Pakdel v. City and County of San Francisco*, 952 F.3d 1157, 1163 (9th Cir. 2020) (noting that a takings claim is not ripe until a final decision of the applicability of a regulation at issue). There is no allegation here that Granite City has denied compensation for the interest that Plaintiffs claim, finally or otherwise. Accordingly, Count III will be dismissed without prejudice.

### *Freedom of Association (Count IV)*

Plaintiffs allege that they are being punished for associating with their adult daughter and that being held "strictly liable for crimes committed by people they associate with burdens the right to association." In *Lyng v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW*, 485 U.S. 360 (1988), the Court considered whether a statute prohibiting a

---

[5] While Plaintiffs hint that Defendant's rationale is perhaps a pretext for impermissible discrimination, no such claim is raised in the Complaint.

"household" from receiving food stamps if one member was on strike interfered with the associational rights guaranteed by the First Amendment. In finding that it did not, the Court held that the statute neither "ordered" individuals not to associate nor did it "directly and substantially interfere with family living arrangements." *Id*. at 364-5. And, in *Rucker*, 535 U.S. at 136 n.6, the Court approved the Ninth Circuit's reasoning that "[j]ust as it does not violate the Constitution to deny an entire household food stamps on the basis of one member's decision to participate in a strike, it is not unconstitutional to evict an entire household on account of one member's drug use." *Rucker v. Davis*, 203 F.3d 267, 647 (9th Cir. 2000).

In this case, Plaintiffs allege that the CFHO substantially burdens their association with their daughter by subjecting them to civil sanctions and liabilities. They point out that both *Lyng* and *Rucker* concerned regulations that conferred a benefit on people; food stamps and subsidized housing. They argue that by contrast, Granite City is not conferring a benefit so much as using coercive tactics to modify behavior – justifications that the Supreme Court rejected in *Lyng* and *Rucker* as being marginal results. They further argue that neither case applies because "[e]xposing the members of an association to physical and economic reprisals or to civil liability merely because of their membership in that group poses a much greater danger to the exercise of associational freedoms than does the withdrawal of a government benefit based not on membership in an organization but merely for the duration of one activity that may be undertaken by that organization." *Lyng*, 485 U.S. at 367 n.5.

At this stage of the proceedings and based on the limited argument made by Defendant, the undersigned cannot conclude that Plaintiffs have failed to state a plausible claim in Count IV. The claim will therefore proceed.

**Conclusion**

Defendant's Motion to Dismiss (Doc. 18) is **GRANTED in part and DENIED in part**; the Motion to Dismiss for Lack of Jurisdiction (Doc. 28) is **DENIED**. Defendant's Motion to file Additional Supplemental Authority (Doc. 54) is **DENIED as MOOT.** Accordingly, Counts I and II are **DISMISSED with prejudice** and Count III is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

DATED: February 9, 2021

**STACI M. YANDLE**
**United States District Judge**