IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBORAH BRUMIT and ANDREW SIMPSON, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 19-cv-1090-SMY |
| v. | ) ) |
| CITY OF GRANITE CITY, ILLINOIS, | ) ) |
| Defendant. | ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiffs Deborah Brumit and Andrew Simpson filed their complaint for declaratory and injunctive relief against Defendant City of Granite City, Illinois ("Granite City"), challenging the constitutionality of a recently-repealed[1] Granite City ordinance that Plaintiffs contend forced private landlords to evict entire households if a tenant, household member, or guest was charged with committing a felony anywhere within city limits. Plaintiffs identify the ordinance at issue as Granite City Municipal Code §§ 5.142.010, *et seq.* Plaintiffs allege they received a compulsory-eviction demand from the Granite City police related to a felony charge levied against Plaintiff Brumit's adult daughter, Tori Gintz, whom Brumit contends was not residing in their Granite City home at the time.

Now before the Court are two motions for court order to obtain records wherein Defendant seeks Tori Gintz's records for her visit to Gateway Regional Medical Center in June 2019 (Doc. 95), and records regarding Plaintiff Brumit's application for guardianship of Tori Gintz's minor

---

[1] An amendment to Granite City's Crime Free Housing Ordinance was issued on December 17, 2019, and Granite City contends that on December 18, 2019, counsel for Plaintiffs was notified of the ordinance amendment and was advised that Granite City would no longer seek to enforce the same against Plaintiffs related to the purported June 11, 2019 Notice of Violation.

children (Doc. 96). Also before the Court is Defendant's Disputed Motion to Compel asking the Court to compel Plaintiffs to produce documents responsive to Request for Production No. 2 of Defendant's Second Set of Requests for Production (Doc. 105), and Defendant's Disputed Motion to Compel asking the Court to compel Plaintiffs to produce documents responsive to Request for Production No. 6 of Defendant's Third Set of Requests for Production (Doc. 117). Plaintiff responded to each of Defendant's motions (Docs. 101, 110, 112, and 123). Defendant was granted leave, and has filed a reply, to Plaintiff's response to its motion for records related to the guardianship records (Doc. 118). The Court held a hearing regarding Defendant's Disputed Motions to Compel (Docs. 105 and 117) on November 18, 2021. The Court addresses each motion separately, as set forth below.

### I. Defendant's Motion for Court Order to Obtain Records (Doc. 95)

Defendant asks that the Court enter an order requiring Gateway Regional Medical Center to produce the records of Tori Gintz between June 1, 2019 and June 10, 2019. Defendant explains it served a subpoena on Gateway Regional Medical Center on June 23, 2021 (*see* Doc. 95-1). On June 29, 2021, Gateway Regional Medical Center responded that the information sought contains sensitive information and, as such, it required a signed authorization by the patient and a witness or a court order specifically allowing the release of sensitive records.

In support of its motion, Defendant asserts Plaintiffs' complaint alleges Brumit drove her daughter, Tori Gintz, from Missouri to Gateway Regional Medical Center for treatment on June 8, 2019. Defendant asserts that in its answer it indicated it was "without knowledge or information to form a belief as to the truth of the allegations" concerning Gintz's medical treatment at Gateway Regional Medical Center. As such, Defendant asserts it seeks records from Gateway Regional Medical Center to verify the allegations in Plaintiffs' complaint. Defendant also asserts

the information sought is reasonably calculated to lead to the discovery of admissible evidence. With regard to privacy concerns, Defendant asserts there is already a protective order in place and Defendant intends to mark any records received as confidential and subject to the protective order.

Plaintiffs object to Defendant's request on several bases. First, Plaintiffs contend Defendant filed said motion without providing notice to the affected non-parties — Gateway Regional Medical Center and Tori Gintz (who died shortly after Defendant's motion was filed on October 23, 2021). Plaintiffs also assert the motion raises questions of timing. Defendant filed its motion almost four months after receiving a response denying its record request, and on the eve of the close of discovery. Indeed, Defendant's motion, filed October 14, 2021, seeks compliance in less than 30 days, by November 5, 2021 (the deadline for discovery).

With regard to the substance of Defendant's motion, Plaintiffs assert the information sought is irrelevant to the remaining claims and defenses, and disproportional to the needs of this case. Plaintiffs argue Tori Gintz's paradigmatically private medical records have no link to the question presented in this case — whether Granite City's compulsory-eviction law violated the U.S. Constitution.

Plaintiffs also assert that the complaint's reference to Plaintiff Brumit dropping Gintz off at the hospital does not open the door to Defendant's "unlimited, never-ending exploration" of Gintz's medical treatment. Plaintiffs explain that Defendant has in its possession Gintz's hospital-discharge instructions, which document the date and time of Gintz's arrival (*see* Doc. 121). Plaintiffs contend the city also knows that Gintz was released no later than 5:27 a.m. on June 9, 2019, when one of the City's officers responded to the crime giving rise to Gintz's arrest (*see* Doc. 110-4 at 3).

Defendant's motion is both procedurally and substantively flawed. First, the peculiar

nature of Defendant's motion is evidenced by the fact that it is not clear whether Plaintiffs have standing to contest it. Defendant also fails to identify any federal rule or authority they are relying on that permits the relief it seeks. Notably, the mechanism for obtaining records from third-parties is generally guided by Federal Rule of Civil Procedure 45, which allows parties to obtain records from third-parties via subpoena. In this instance, Defendant has apparently withdrawn its subpoena request. If not, it should have filed a motion seeking to enforce its subpoena and notified Gateway Regional Medical Center of the same. Thus, the Court is unable to discern what authority it has to provide the relief Defendant now seeks.

Further, the Court questions the timing of Defendant's motion. Defendant knew Gateway Regional Medical Center was not going to comply with its subpoena by June 29, 2021. Rather than seek relief immediately, Defendant waited almost four months to file three-page motion approximately three weeks before the November 5, 2021 discovery deadline. Specifically, Defendant's motion was filed on October 14, 2021. By way of court procedure, Plaintiffs' response was not due until October 28, 2021, and they timely filed the same. Thus, at the time of filing, Defendant should have discerned that the motion would be ripe for review just one week before discovery closed. The Court is not inclined to order a third-party medical provider to provide documents within such a short time[2]. Notwithstanding the procedural issues presented by Defendant's motion for records, the Court also addresses substantive concerns regarding its motion.

Defendant seems to contend the records are relevant insofar as the records sought "will allow Defendant to verify allegations contained in Plaintiffs' Complaint." Defendant's definition

---

[2] The Court notes that despite all due diligence on the Court's part in addressing Defendant's motion in a timely manner, discovery at this point has closed.

of relevance in this instance is not in accordance with the Federal Rules[3].

The scope of discovery is set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure. The current language of the Rule provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Supreme Court has cautioned that the requirement under Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where necessary. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). However, "relevancy" for discovery purposes is construed broadly to encompass matters that bear on, or reasonably could lead to other matters that could bear on, any issue in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "Relevance is not inherent in any item of evidence, but exists only as a relation between an item of evidence and the matter properly provable in the case." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 722 (N.D. Ill. Jan. 6, 2014) (citation omitted).

Here, Defendant already has evidence in its possession related to Gintz's hospital stay,

---

[3] The Court finds that even if Plaintiffs' standing to object to Defendant's motion is not clear, it is still obligated to limit discovery that is beyond the scope of Rule 26(b)(1). Indeed, courts *must*, on motion or *on its own*, limit the frequency or extent of discovery otherwise allowed if said discovery is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P.26(b)(2)(C).

including information evidencing the approximate time she arrived. Although Gintz's hospital stay and Gateway Regional Medical Center were briefly mentioned in the "Introduction" and "Factual Allegations" sections of Plaintiff's Complaint, records detailing said stay are not relevant to any claim or defense. Indeed, the central issue in this case is whether Defendant's purported "compulsory eviction law" is (or was) constitutional and whether it should have been enforced in this instance against Plaintiffs. While Gintz's whereabouts may be tangentially relevant to the issues in this case, the details of Gintz's hospital stay are not, and any such details are certainly not proportional to the needs of this case. Simply put, Defendant already has in its possession relevant information concerning the whereabouts of Gintz and further discovery as to this issue is not appropriate under Rule 26.

For these reasons, Defendant's Motion for Court Order to Obtain Records (Doc. 95) is **DENIED**.

## II.     Defendant's Motion for Court Order to Obtain Records (Doc. 96)

Defendant asks that the Court enter an order requiring Illinois Children Home + Aid, or in the alternative, Illinois Department of Children and Family Services, to turn over to Defendant's counsel records, documents, notes, and reports that reference Plaintiff Brumit's application for guardianship and the services and benefits utilized by Plaintiff Brumit in seeking guardianship of Tori Gintz's minor children. Defendant asks that such documents be produced by November 5, 2021. Defendant explains it previously attempted to obtain these records via a records subpoena, but was notified by Illinois Children Home + Aid that a court order was required before it would provide said documentation.

In support of its motion, Defendant remarks that Plaintiffs' Complaint indicates they were seeking guardianship of Plaintiff Brumit's grandchildren, Tori Gintz's minor children. Defendant

Page **6** of **13**

asserts that evidence related to Plaintiff Brumit's application for guardianship and the services and benefits utilized by Brumit in seeking custody/guardianship may evidence or reflect the relationship between Gintz and Brumit at the time of the documents' creation. Defendant contends such information is relevant and discoverable as it will allow Defendant to verify allegations included in Plaintiffs' Complaint. Defendant also contends this information is relevant to Count IV, Plaintiffs' claim for Freedom of Association.

Plaintiffs object to Defendant's request on several bases, some of which are similar to the objections set forth to Defendant's request for Gintz's medical records. First, Plaintiffs assert Defendant's motion is "ungrantable" as neither by Illinois Children Home + Aid nor Illinois Department of Children and Family Services is under an active subpoena. Indeed, it appears Defendant withdrew the subpoena issued to Illinois Children Home + Aid on October 7, 2021 (*see* Doc. 101-2).

Plaintiffs also contend Defendant filed said motion without providing notice to the affected non-parties.

With regard to the substance of Defendant's motion, Plaintiff asserts Defendant seeks a "swath" of sensitive records about a nonparty three-year-old and a nonparty five-year-old, and such records have no link to the question presented in this case — whether Granite City's compulsory-eviction law violated the U.S. Constitution.

Again, the Court finds Defendant's motion is both procedurally and substantively flawed. Defendant has again failed to identify any federal rule or authority on which it is relying that would permit the relief it seeks. Plaintiffs correctly assert there are no active subpoenas. In reply, Defendant asserts it is seeking a subpoena. First, Defendant's motion makes no request for the Court to issue a subpoena; rather, the request specifically asks the Court to enter an "Order"

requiring the entities named above to produce records, documents, notes, and reports. Further, the undersigned does not issue subpoenas, as Rule 45 makes clear subpoenas are to be issued by the Clerk. The Court reiterates that the mechanism for obtaining records from third-parties is generally guided by Federal Rule of Civil Procedure 45, which allows parties to obtain records from third-parties via subpoena. If Defendant seeks to enforce its subpoena it should have filed a motion requesting the same and provided notice to the relevant third-party entities. Accordingly, Defendant's motion is procedurally improper.

The Court, however, finds it necessary to address the substance of Defendant's motion so that the parties, and potential third-parties, do not become entrenched in unnecessary and costly motion practice. First, the Court disagrees with Defendant's characterization that "Plaintiffs have placed at issue in this matter the guardianship, and the process and reasoning for seeking guardianship." The Court acknowledges Plaintiffs referenced they were in the process of seeking guardianship in one paragraph of their Complaint (*see* Doc. 1 at ¶ 59) in the "Factual Allegations" Section. This allegation does not, in and itself, make the guardianship a claim, defense, or legal issue in this case — and it certainly does not open up the floodgates for Defendant to obtain all "records, documents, notes, and reports" related to minor children who are not parties to this action. This is not the standard, as set forth above, for discovery under Rule 26. Further, the Court finds Defendant's claim that the records sought relate to Plaintiff's claim of freedom of association without merit. There is no indication that these records would evidence the relationship between Plaintiffs and Tori Gintz and the request for the same amounts to pure speculation that such records would exist. The Court will not allow such an impermissible fishing expedition. *See DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, No. 1:18-cv-02312, 2020 WL 3050230, at *7 (N.D. Ill. June 8, 2020) (citations omitted); *see also Vakharia v. Swedish Covenant*

Page **8** of **13**

*Hosp.*, No. 90-C-6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994) ("The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.").

For these reasons, Defendant's Motion for Court Order to Obtain Records (Doc. 96) is **DENIED**.

### III.     Defendant's Disputed Motion to Compel (Doc. 105)

Defendant's Second Set of Requests for Production No. 2 requests "Text messages, direct messages, facebook messages, or the like between Deborah Brumit and Tori Gintz" from June 1, 2019 to present.

Plaintiffs objected asserting said request is overly broad and intrusive insofar as it is not limited to subject matter and "sweeps up all manner of irrelevant material." Plaintiffs assert that because it does not "describe with reasonable particularity each item or category of items to be inspected," it is also disproportionate to the needs of this case, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to the request as it seeks "uniquely" personal information. Plaintiffs explain that Plaintiff Brumit was deposed for over four hours and Defendant is aware of Brumit's efforts to assist her adult daughter, Tori Gintz, recover from drug addiction. Plaintiffs assert the information sought is highly personal and "implicates obvious core privacy interests."

Defendant asks that the Court overrule Plaintiffs' objections and order them to comply with the Request. In support of its motion, Defendant asserts the documents are relevant to Plaintiff's claim to the right to associate under the First and Fourteenth Amendments (Count IV). Defendant explains that the Seventh Circuit standard for intimate association claims is that the ordinance must have directly and substantially burdened Plaintiffs' association with Tori Gintz. Therefore,

Defendant contends, communications between Brumit and Gintz are relevant and discoverable as it can show the status of their relationship prior to the issuance of the June 11, 2019 Notice of Violation, and any changes thereto subsequent to service of said Notice.

Plaintiffs disagree with Defendant's characterization of their claim and the elements required to prove or disprove the same. More specifically, Plaintiffs assert they have never alleged Defendant's compulsory-eviction law destroyed their relationship with Tori Gintz, and contend such an allegation is unnecessary. Plaintiffs clarify their associational-rights claim is a straightforward *legal* claim — that by requiring their eviction due to their association with Gintz, the compulsory-eviction law violated the Constitution.

As highlighted at the motion hearing and in the parties' briefing, the crux of the parties' disagreement concerning the relevance of the requested documents and scope of discovery is centered on their differing theories of Plaintiffs' associational-rights claim. Their theories and bases for their reasoning have been briefed in dispositive motions. However, to resolve the motion before the Court, the undersigned need not resolve this fundamental and dispositive issue as it is apparent from the filings in this case that Plaintiffs do not contend they were prohibited or prevented from having a relationship with Gintz as a result of the ordinance or due to the City of Granite City or its employees. Indeed, in response to Defendant's motion to compel, Plaintiffs stated that they "have been forthright throughout this case that the City's compulsory-eviction law did not deteriorate or destroy their relationship with Tori Gintz" (Doc. 112 at 6). Also, in their motion for summary judgment, Plaintiffs state "[i]t is of course true that the compulsory-eviction law did not destroy Debi and Andy's relationship with Debi's daughter" (Doc. 125-1 at 19). This admission is significant to the Court's consideration of the factors for relevancy set forth in Rule 26(b).

In light of Plaintiffs' admission concerning her relationship with Gintz and the evidence in the record to support it (*see, e.g.,* Deposition of Deborah Brumit, Doc. 77-2 at 139), it appears the importance of the discovery sought is minimal in resolving the issues and the burden of the discovery sought outweighs its benefit. Moreover, this is an instance where it appears the discovery sought is cumulative or duplicative insofar as Defendant already questioned Plaintiff Brumit about her relationship with her daughter Tori Gintz, as well as Plaintiff Brumit's other daughter, Alexis Benson, about the relationship. *See Hespe v. City of Chicago*, No. 13 C 7998, 2016 WL 7240754, at *5 (N.D. Ill. Dec. 15, 2016) (denying the defendants' request for a forensic search of the plaintiff's devices to support their position that the plaintiff and a defendant were in a consensual, romantic relationship because the plaintiff had conceded that point in her brief in opposition to the defendants' motion to compel. The court remarked that the defendants "have not demonstrated that the evidence is likely to be more probative than the admissions they do have"). The cumulative nature of the discovery sought further minimizes the importance of said discovery to resolving the issues in this action. Thus, the Court finds that consideration of the factors set forth in Rule 26(b)(1) and limitations set forth in Rule 26(b)(2)(C) weighs in favor of Plaintiffs and against Defendant. Defendant's Disputed Motion to Compel (Doc. 105) is therefore **DENIED**.

**IV.   Defendant's Disputed Motion to Compel and Motion to Overrule Plaintiffs' Objections (Doc. 117)**

Defendant asks the Court to compel Plaintiffs to produce documents requested in Defendant's Third Set of Requests for Production No. 6. Said request seeks "[t]ext messages, direct messages, facebook messages, or other correspondence between Deborah Brumit and Tyler Sears" from May 1, 2019 to present.

Plaintiffs objected to this request as overly broad and intrusive.  Plaintiffs also objected on the basis of proportionality and relevancy.   Finally, Plaintiffs object that the request is uniquely burdensome, coming shortly after the death of Plaintiff Brumit's daughter.

Defendant contends the information sought is relevant to the remaining associational-rights claim pled as Count IV.  Defendant seems to assert that because Tyler Sears was Tori Gintz's boyfriend at the time the Notice of Violation was issued to Plaintiffs the communications sought are relevant.  Defendant further contends Sears is an individual with knowledge of the underlying facts and circumstances surrounding Plaintiffs' complaint.

In consideration of the factors set forth in Rule 26, the Court finds the request at issue is neither relevant nor proportional to the needs of this case.  Sears is not specifically mentioned in Plaintiffs' Count IV and there is no indication that Sears has any relation to this claim or specific knowledge related to the same.  Moreover, although Sears is briefly mentioned in the factual portion of the complaint, this is not sufficient to demonstrate the discovery Defendant now seeks is relevant to the issues in this case and proportional under Rule 26.  Insofar as Defendant contends Sears may have knowledge of the relationship between Plaintiffs and Gintz, the Court's ruling with regard to Defendant's Motion at Doc. 105 is applicable.  For these reasons, Defendant's Disputed Motion to Compel (Doc. 117) is **DENIED**.

## Conclusion

Based on the foregoing, Defendant's Motions for Court Order to Obtain Records (Docs. 95 and 96) are **DENIED**, and Defendant's Disputed Motions to Compel (Docs. 105 and 117) are **DENIED**.

**IT IS SO ORDERED.**

**DATED: November 22, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**