IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBORAH BRUMIT and ANDREW SIMPSON, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 19-cv-1090-SMY ) |
| THE CITY OF GRANITE CITY, ILLINOIS, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Deborah Brumit and Andrew Simpson filed the instant lawsuit against the City of Granite City, Illinois, alleging the City's enforcement of compulsory eviction pursuant to its Crime Free Housing Ordinance violates their constitutional rights in various respects (Doc. 1). One claim remains at this juncture – alleged violation of Plaintiffs' First and Fourteenth Amendment right to associate.

The case is now before the Court for consideration of the parties' cross-motions for summary judgment (Docs. 76, 78, 125) and responses in opposition (Docs. 86, 131). For the following reasons, Defendant's motions are **GRANTED**, and Plaintiffs' motion is **DENIED**.

## Factual Background

The following relevant facts are undisputed unless otherwise noted: at the time this lawsuit was initiated, Plaintiffs Deborah Brumit and Andrew Simpson were in a committed relationship and had resided in a rental property located at 7 Briarcliff Drive in Granite City, Illinois ("the home") since 2016 (Doc. 86-9 at ¶¶2-3; Doc. 86-10 at ¶¶2-3). Brumit has three adult children

(Doc. 86-9 at ¶4).  Her youngest, Tori, lived with Brumit and Simpson at the home until approximately January 2017 (Doc. 86-9 at ¶6).

In approximately January 2019, Tori again began living with Brumit and Simpson, off-and-on, until approximately May 2019 (Doc. 86-9 at ¶7).  She called Brumit in June 2019, indicating that she wanted to get help for her addiction (Doc. 86-9 at ¶10).  Brumit brought Tori and her boyfriend to the home to stay for one night before she took them to Gateway Regional Medical Center (Doc. 86-9 at ¶11).  Tori returned to the home early the next morning but did not stay (Doc. 86-9 at ¶13).  Brumit and Simpson did not hear anything further from Tori or her boyfriend until they were advised by Brumit's older daughter that Tori had been arrested for stealing a van (Doc. 86-9 at ¶¶13, 14).

At all relevant times, Granite City had in place a Crime Free Housing Ordinance ("CFHO") and Crime Free Lease Addendum ("CFLA") that required private landlords to evict private tenants if any member of the tenant's household committed a felony anywhere within city limits (Doc. 86-4 - Deposition of Timothy Bedard, pg. 10, lines 2-5; Doc. 86-5).  On June 11, 2019, a Notice of Violation citing Tori and her boyfriend's theft of a vehicle as an offense relating to motor vehicles (Class 2 felonies) was served on Brumit and Simpson by the Granite City Police Department (Doc. 79-1).  The Notice advised that the offenses were a clear violation of the CFLA and grounds for eviction.  (*Id.*).

Pursuant to the Notice, Brumit and Simpson requested a grievance hearing (Doc. 86-9 at ¶18).  Brumit presented evidence that Tori no longer lived at the home, that she had mail addressed to a Missouri address, and that she had been in the hospital and not at the home on the night of the theft.  (*Id.*).  The City's hearing officer ultimately found that the City had properly invoked the "compulsory-eviction law" and directed that "[t]he landlord, Clayton Baker, must begin eviction

proceedings against the tenants listed above." (Doc. 86-7). In response, Baker issued a 30-day eviction notice to Brumit and Simpson (Doc. 8-3).[1]

On December 17, 2019, Granite City amended the CFHO pursuant to Ordinance No. 8805 (Doc. 73-3). The amendment prohibits the termination of a lease for criminal activity occurring off of the rental property (consistent with the Illinois Human Rights Act). The CFHO was again amended on July 7, 2020 by Ordinance No. 8856, repealing Section 5.142.050 of the Granite City Municipal Code as it existed in July 2020 and the mandatory eviction language contained in Ordinance 8186 (Doc. 73-6). On October 1, 2020, Ordinance No. 8873 was enacted to provide a mechanism by which the Granite City Building and Zoning Administrator can review the status of a residential rental unit license to determine whether action to change the status of the license is needed (Doc. 73-7). Ordinance No. 8873 further provides that any actions challenging licensure and demanding evictions based on prior Section 5.142.050 were to be dismissed and not reinstated. (*Id.*).[2]

By letters dated December 19, 2019, Granite City notified Brumit and Simpson (through Counsel) and Clayton Baker, their landlord, that the June 11, 2019 Notice of Violation of the CFLA was withdrawn and that "…no action is required to be taken in relation to this Notice of Violation." (Docs. 73-4, 73-5).

## Discussion

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

---

[1] Baker asserts he only issued a 30-day notice to Brumit and Simpson because of potential penalties he would face if he did not comply with the ordinance. *Id.*

[2] The Court previously rejected Defendant's argument that the amendments to the CFHO rendered Plaintiffs' claim moot (Doc. 59).

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). The Court must evaluate each cross-motion independently, making all reasonable inferences in favor of the nonmoving party. *Franklin v. City of Evanston,* 384 F.3d 838 (7th Cir. 2004).

Here, Granite City makes several arguments in favor of summary judgment: that Plaintiffs have failed to establish that they were engaged in an expressive association protected by the First Amendment; that Plaintiffs cannot establish an intimate or familial association to support a First Amendment claim; that Plaintiffs' relationship with Tori is not one that has been recognized as creating a fundamental right under the Fourteenth Amendment; that there is no fundamental right not to be punished due to criminal acts of a third party; that the ordinance in question does not directly and substantially burden Plaintiffs' association with Tori, and is therefore subject to rational basis review; that the ordinance is rationally related to a legitimate governmental interest and is therefore constitutional; and, that there is no longer any need for forward-looking injunctive relief. In support of their motion, Plaintiffs argue that Granite City's compulsory-eviction law was per se invalid; that if not per se invalid, it fails every level of scrutiny; that the right to be free from guilt by association extends beyond "expressive" and "intimate" associations; and, that the compulsory-eviction law burdened associational rights in a way the Constitution forbids.

Freedom of intimate association is the constitutionally protected right to "enter into and maintain certain intimate human relationships." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984). It is a fundamental element of personal liberty which is protected by the due process clauses. *Id.*

at 618; *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005).[3] The parent-child relationship lies at the heart of protected familial associations and extends to parents and adult children. *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006). The threshold question here is whether the CFHO imposes a direct and substantial burden on that intimate relationship. If so, it is subject to strict scrutiny; if not, it is subject to rational basis review. *Montgomery*, 410 F.3d at 938 *citing Zablocki v. Redhail*, 434 U.S. 374, 383-387 (1978).

Government action has a "direct and substantial influence" on intimate association "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations.]" *Anderson v. Lavergnem*, 371 F.3d 879, 882 (6th Cir. 2004); *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001) *citing Montgomery v. Carr*, 101 F.3d at 1117, 1124-1125 (6th Cir. 1996). While associational rights "are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference," *Bates v. Little Rock*, 361 U.S. 516, 523 (1960), "…state or local regulations are not unconstitutional deprivations of the right of family association unless they regulate the family **directly**." *Hameetman v. City of Chicago*, 776 F.2d 636, 643 (7th Cir. 1985) (emphasis added). "The collateral consequences of regulations not directed at the family…do not bring the constitutional rights of family association into play." *Id.*

There is no evidence on record that Brumit and Simpson were directly prevented from forming or maintaining their intimate familial association with Brumit's adult daughter. Brumit

---

[3] While the parties disagree on whether freedom of association claims are to be analyzed under the First Amendment or the Fourteenth Amendment, this dispute is of no consequence; the analysis that applies to claims arising under either provision is the same. See, *Swank v. Smart*, 898 F.2d 1247, 1251-1252 (7th Cir. 1990); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 919-920 (1982).

testified that no one from Granite City had ever told her that she could not associate or have a relationship with her daughter, Tori. (Doc. 131-6, pp. 12-13 at lines 23-25, 1). And neither the CFHO nor the CFLA directly regulate the family. The ordinance did not take into consideration who resides at the residences or the type of relationship the individuals have with each other. Although it may ultimately impact families in some respect, its impact on familial association is too indirect to bring the constitutional rights of family association into play. Simply put, the CFHO does not place a direct and substantial burden on the right to intimate familial association; it will be upheld herein if it bears a rational relation to some legitimate end. *See Romer v. Evans*, 517 U.S. 620, 631 (1996); *Heller v. Doe*, 509 U.S. 312, 319-20 (1993); *National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995) ("[A] legislative decision 'is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data.'") (*quoting FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)).

Granite City's stated purpose in implementing the CFHO was to "protect the health, safety, and welfare of the citizens" by "protecting against crime." (Doc. 125-5, Deposition of 30(b)(6) Timothy Bedard at p. 5). Although Plaintiffs submitted statistics to show that the CFHO may not have accomplished the degree of protection that the City intended (Doc. 125-1 at pp. 11-13), they have presented no evidence sufficient to negate the stated basis for enactment of the ordinance. There can be no question that crime deterrence and prevention are rational and legitimate reasons for a municipality to enact legislation. *See generally Univ. Professionals of Illinois, Local 4100, IFT-AFT, AFL-CIO v. Edgar*, 114 F.3d 665, 667 (7th Cir. 1997). As such, in the absence of evidence of pretext, the CFHO satisfies rational basis constitutional review and does not violate Plaintiffs' right to freedom of association.

**Conclusion**

For the foregoing reasons, Defendant Granite City's Motions for Summary Judgment with respect to the claims of Plaintiff Deborah Brumit (Doc. 76) and Plaintiff Andrew Simpson (Doc. 78) are **GRANTED in their entirety**. Plaintiffs' Motion for Summary Judgment (Doc. 125) is **DENIED**.

All pending motions are **TERMINATED** as **MOOT**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED: September 15, 2022**

_____
**STACI M. YANDLE**
**United States District Judge**